UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                    CASE NO.: 23-cr-264-02

JACOB HAWKINS,              HON. JOHN D. BATES

    Defendant.
_____/

## DEFENDANT'S SENTENCING MEMORANDUM

### I.

### INTRODUCTION

Jacob Hawkins is deeply remorseful for his participation in the events of January 6. He understands that his participation helped undermine the tradition of the peaceful transfer of power in this country, that the events of that day led to multiple deaths and injuries, and that shockwaves from that day continue to divide the country.

When he looks back on his participation, Mr. Hawkins feels like he was tricked by President Trump. He no longer supports Mr. Trump and deeply regrets his actions. Over the last three years he has focused on providing for his family.

Because of his remorse and rehabilitation, a custodial sentence is not necessary to satisfy the factors set forth in 18 U.S.C. § 3553.

II.

FACTUAL INFORMATION

a. <u>Jacob Hawkins' History</u>

Although Jacob Hawkins' describes his childhood as "good" or "normal" it was considerably more difficult than most. At the age of 4 his mother took him and fled from his father. Before he was 10 years old he moved around California numerous times while "on the run" from his father. Money was often tight because his mother felt she could not be on public assistance because she was in hiding. Around the age of 10, Mr. Hawkins moved to Colorado and had a stable home for several years before the family relocated to Arizona. He stayed there until 2018 when he relocated to Michigan with his wife.

Mr. Hawkins' lack of stability as a youth carried over into his early adult years. He did not complete college and he worked a wide variety of service industry jobs. He has a child in Arizona from a former relationship. He has two arrests and a conviction for what appears to have been extremely juvenile and immature behavior. None of that behavior involved deliberate criminal activity intended to harm others. Mr. Hawkins has never been assaultive or attempted to take advantage of others.

In his thirties, Mr. Hawkins finally settled into a stable situation when he met Ms. Hawkins, nee Jaure. For the last five years he has been working as an Uber driver. His Uber driver profile indicates he has made over 14,000 trips and has an almost perfect rating. He is living with Ms. Hawkins and their two children. The family is involved in the community and church.[1]



---

[1] Letters in support of both Mr. and Ms. Hawkins as well as family photos are attached to her sentencing memorandum.

b. <u>Mr. Hawkins' Involvement in the January 6th Riot</u>

Even before the 2020 election, President Donald Trump made statements intended to sow doubt about the results of that election. See Final Report of the Select Committee to Investigate the January 6th Attack on the United States Capitol, Chapter 1, Section 3. After he lost the election, Mr. Trump's rhetoric intended to undermine public confidence in the election results and convince his supporters that he had won only increased. *Id*. Chapter 1, Section 4 et seq.

Mr. Trump's comments were amplified through social media post, podcast, and blogs.  It soon became clear that professional journalists were powerless to counter the false narrative being spun.  This was particularly true in areas that contained a high percentage of Trump voters.  These persons lacked the perspective of friends, neighbors, or co-workers providing them with an alternative point of view. Mr. Hawkins lived in one such area.  Rural Michiganders are generally conservative voters and rural Jackson and Hillsdale County, where Mr. Hawkins lives, is particularly conservative.

Mr. Trump's rhetoric was intended to spur his supporters to take action, including drastic action. *Id*. Chapter 6.  Mr. Hawkins and his wife were two people swayed by this rhetoric.  They travelled to Washington, D.C. on a bus with other supporters to attend the Stop the Steal Rally because they felt it was their patriotic duty.  They came to support President Trump, not to engage in violent conduct.  They

did not bring weapons, tactical gear, or body armor.  Mr. Hawkins has stated that he thought Mr. Trump would reveal direct evidence of election fraud at some point that day and that he would be witnessing an important historical event.

On January 6, they listened to Mr. Trump speak and marched to the Capitol when instructed.  Again, Mr. Hawkins thought that at the Capitol Trump would speak and reveal evidence of voter fraud. Admittedly, Mr. Hawkins was near the front of the group that entered through the Rotunda Door.  However, while others around him engaged in violent action and sought confrontation with the police, Mr. Hawkins did not.  Even when part of a mob, Mr. Hawkins did not yell at officers or engage them physically.  He and his wife entered the Capitol, walked through, and left.

II.

SENTENCING FACTORS

The above sections discuss the nature and circumstance of the offense (which are serious) and the history and characteristics of the defendant (which are almost all positive).  The remaining §3553 sentencing factors warrant a non-custodial sentence.

The prosecution of those who participated in the riot of January 6 is important. These prosecutions promote respect for the law.  However, sentences of incarceration for those who participated, but did not engage in violence, were not

leaders, and had no part in the planning of January 6 is not necessary. Respect for the law must be accomplished not simply by imposing harsh sentences, but by imposing fair sentences that factor in the relative culpability of all the participants.

Similarly, it is not necessary to incarcerate Mr. Hawkins to deter him or others from engaging in similar conduct. Over 1,000 people have been prosecuted for their participation in the January 6 riot. The Department of Justice's impressive efforts in making sure that participants are charged and convicted is the best deterrent to those contemplating future actions similar to those of January 6. Research into deterrence of crime has shown that "[t]he certainty of being caught is a vastly more powerful deterrent than the punishment." U.S. Department of Justice, Office of Justice Programs, National Institute of Justice, *Five Things About Deterrence*, 2016. The massive number of prosecutions of January 6 participants, as opposed to any individual sentence imposed, will be the main driver that will deter future misconduct by others.

Mr. Hawkins is a married father who deeply regrets his involvement. He feels like he was tricked and used. He went to the Capitol because he was told by the President of the United States that this is what he should do; but for this, he would not have gone. He now knows better. For the last three years he has worked to support his family. There is no credible argument he will reoffend. Specific deterrence should not be a major consideration in sentencing.

Ms. Hawkins' sentencing memorandum contains an extensive discussion of sentencing disparity as applied to Mr. Hawkins and Mrs. Hawkins.

Finally, it is not necessary to further rehabilitate Mr. Hawkins or Ms. Hawkins. They have learned their lesson. They are living a modest but good life with their two children.

## IV.

## CONCLUSION

The events of January 6 were terrible for many reasons, not the least of which was the fact that good people like Mr. Hawkins acted as part of a mob in ways they would never have acted on their own, in ways they never acted before, and in ways they will never act again. Mr. Hawkins is ashamed and embarrassed by his actions. He is a productive member of his community and a loving husband and father. This prosecution has caused him significant stress and worry, not only for himself but also for his family. A custodial sentence is unnecessary to fulfill the goals of 18 U.S.C. §3553. This Court should impose a probationary sentence with a requirement to complete community service.

        Respectfully submitted,

        **FEDERAL COMMUNITY DEFENDER**

        s/James R. Gerometta
        Assistant Federal Defender
        613 Abbott Street, Suite 500
        Detroit, MI 48226
        Phone: 313-967-5839
        E-mail: james_gerometta@fd.org
        P60260

Dated:  January 5, 2024